Stephen P. WILFONG,
Plaintiff–Appellee,

v.

UNITED STATES of America,
Defendant–Appellant.

No. 92–1310.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 2, 1992.

Decided April 8, 1993.

---

360

Donald E. Weihl, (argued), Sue A. Schultz, Thompson & Mitchell, Belleville, IL, for plaintiff-appellee.

Claudia M. Jones, Office of the U.S. Atty., Crim. Div., Fairview Heights, IL, Gary R. Allen, David I. Pincus, Bridget Rowan (argued), Dept. of Justice, Tax Div., Appellate Section, Washington, DC, Gerald M. Burke, Office of the U.S. Atty., Civ. Div., Fairview Heights, IL, Mark Winer, Dept. of Justice, Tax Div., Appellate Section, Washington, DC, for defendant-appellant.

Before RIPPLE and ROVNER, Circuit Judges, and ENGEL, Senior Circuit Judge.*

ROVNER, Circuit Judge.

Stephen P. Wilfong, a certified public accountant, filed this action seeking a refund of a tax-return-preparer penalty assessed against him by the Internal Revenue Service in connection with his preparation of the corporate income tax return of Francis F. Kayira, M.D., Ltd. After a jury found in his favor, Wilfong petitioned the district court for attorneys' fees and costs pursuant to 26 U.S.C. § 7430. The district court granted Wilfong's petition and ordered the United States to reimburse him

* The Honorable Albert J. Engel, Senior Circuit Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation.

for fees and costs totaling $26,708.71. The government appeals only from the award of fees and costs, arguing that the district court abused its discretion when it concluded that the government's position in this litigation was not substantially justified. The government also maintains that even if a fee award was appropriate, the district court erred in awarding fees at an hourly rate in excess of the $75 per hour statutory rate. We agree that the government's position was substantially justified and reverse the district court's award of fees and costs.

## I. FACTS

Wilfong has been a certified public accountant ("CPA") since 1971. In 1979, he established his own accounting practice in Collinsville, Illinois. A portion of Wilfong's practice is devoted to the preparation of individual, corporate, and partnership tax returns. In August 1982, Dr. Francis F. Kayira, an obstetrician and gynecologist practicing in East St. Louis, Illinois, engaged Wilfong to prepare his corporate and individual income tax returns. Kayira hired Wilfong because he was dissatisfied with his previous accountant, Taylor C. Scott. One of Wilfong's initial tasks was to prepare the corporate return for Kayira's medical practice for the fiscal year ending January 31, 1983 (the "return"). Wilfong filed the return with the IRS on December 19, 1983.[1]

Kayira's corporate and personal returns for 1982 were audited by Robert Meyer, an IRS auditor. Meyer proposed $44,658 in adjustments to the corporate return. Two types of errors prompted the adjustments: (1) personal or unsubstantiated items that were improperly deducted as business expenses; and (2) a $20,000 reduction to gross income intended to compensate for an error made the previous year. As a result of these errors, the IRS assessed against the corporation an $11,000 tax deficiency and $3,545 in penalties. Kayira ultimately conceded the propriety of all the auditor's proposed adjustments and penalties with the exception of a penalty for substantial understatement of tax liability.

In addition to these adjustments, Meyer recommended imposition of a $100 return-preparer penalty against Wilfong pursuant to 26 U.S.C. § 6694(a).[2] Meyer believed that the penalty was warranted because of the many negligent errors in the return, especially those relating to the deduction of Kayira's personal expenditures as business expenses. An IRS appeals officer subsequently upheld the penalty. Wilfong paid the penalty and then filed this suit for a refund.

### A. The Trial.

In the course of a three-day jury trial, Wilfong offered evidence to justify his work on the corporate return. Because the propriety of Wilfong's accounting practices is central to whether the government's position was substantially justified, we recount the trial evidence in some detail.

#### 1. Business expense deductions.

Among the items that Wilfong had deducted as business expenses were two season tickets to St. Louis Cardinals baseball games. Wilfong testified that he asked Kayira about the tickets, and Kayira told him that because he rarely had time to use

---

1. The return was initially due on April 15, 1983. The IRS granted two extensions of the due date to October 15, 1983. The return ultimately was filed approximately two months after that date.

2. During the relevant time period, section 6694(a) provided as follows:
   (a) **Negligent or intentional disregard of rules and regulations.**—If any part of any understatement of liability with respect to any return or claim for refund is due to the negligent or intentional disregard of rules and regulations by any person who is an income tax return preparer with respect to such return or

claim, such person shall pay a penalty of $100 with respect to such return or claim.
   The amended version of section 6694(a) now imposes a $250 penalty on a tax return preparer who knew or reasonably should have known of an understatement in tax liability "due to a position for which there was not a realistic possibility of being sustained on its merits." The amended version applies only to documents prepared after December 31, 1989. *See Goulding v. United States*, 957 F.2d 1420, 1424 n. 3 (7th Cir.1992).

the tickets himself, he routinely gave them to colleagues, patients, or "whoever happened to be around." (Trial Tr. at 46.) Wilfong accepted this explanation without asking Kayira to substantiate to whom or for what business purpose the tickets were provided. Testifying for the government, Kayira stated that he had the tickets because he enjoyed taking his son to baseball games and that he gave the tickets away only ten to fifteen percent of the time. He did not recall whether Wilfong had asked about his use of the baseball tickets while preparing the return but stated that if he had been asked, he would have told Wilfong the tickets were for his personal use. Indeed, he said as much to Meyer in the course of the IRS audit.

Wilfong also had deducted six checks payable to "Zale's." He testified that either Kayira or Sharon,[3] Kayira's office manager and bookkeeper, had told him that the checks were for office supplies. Kayira testified that Wilfong had not asked about the checks until after the audit, when he told Wilfong that he had purchased jewelry for his personal use. Wilfong claimed that when he was preparing the return, he was unaware that Zale's was a jewelry store; rather, he confused the name with Zayer's Department Store. He did concede, however, that personal jewelry could not be deducted as a business expense.

Wilfong also had deducted one hundred percent of the depreciation on the corporation's automobile, although he knew that Kayira utilized the vehicle for personal purposes. The IRS auditor computed the business use at just 17.68 percent. Wilfong explained that in taking the complete depreciation deduction, he had merely followed the practice of the prior accountant. Wilfong also emphasized that Kayira paid for insurance, minor maintenance expenses, and gasoline, thereby making up for his personal use of the vehicle. Meyer testified, however, that in addition to deducting depreciation on the corporate return, Kayira had deducted mileage on his personal return. Meyer testified that it

was improper to take both depreciation and mileage deductions for the same vehicle.

The auditor also challenged deductions for two checks recorded in the general ledger as payable to the Committee to Elect Hall and the Committee to Elect Younge, which he determined were political contributions. Wilfong testified that the checks were made out to either Younge or Hall, or their respective law firms, and that Kayira had told him the checks were payment for legal services. Yet, Meyer observed that these payments were recorded in an account called "flowers and contributions," rather than the separate account for professional services.

The IRS also challenged a deduction for group insurance. This deduction represented premiums on group life, health, and disability insurance policies that Kayira purportedly had paid on behalf of his employees. The auditor discovered that Kayira in fact paid only for his own life and disability insurance and not that of his employees. As a result, the IRS disallowed these deductions.

The jury also heard extensive testimony about credit card charges, particularly amounts charged to Kayira's American Express and Chase Manhattan Bank ("Chase") credit cards. Wilfong had deducted these amounts as business travel and entertainment expenses because he had been told that the charges related to travel and expenses for professional education seminars. Kayira retained no receipts for these expenditures but told Wilfong that he could obtain receipts if necessary to substantiate the business purpose of the charges. Wilfong accepted his client's explanation without requiring Kayira to obtain receipts. The government produced evidence indicating that the receipts themselves would have been insufficient to substantiate the deductions in any event because, standing alone, they would not have established a business purpose for the charges. After the IRS auditor obtained the receipts, he determined that many of the charges were not deductible. In particular, a number of the charges

---

3. The record does not reveal Sharon's last name. She did not testify at trial.

served to pay off a Chase loan to Kayira. The loan repayments were not deductible because Kayira previously had deducted the items paid off by the loan proceeds. Moreover, many of the American Express charges proved to be personal and unrelated to Kayira's continuing professional education. The government's expert testified that, in his opinion, Wilfong had lacked sufficient information to substantiate the travel and entertainment deductions.

In defending these deductions, Wilfong maintained that he simply followed the practice of Kayira's prior accountant not to disallow any personal, non-deductible expenses. Because he assumed that the prior accountant had exercised some care in the preparation of the 1981 return, Wilfong did not consider it a priority to ensure that all expense deductions related to business rather than personal use.[4] Instead, his main priority was to file the return.

2. Gross income adjustment.

Apart from the improper deductions, the other major adjustment to the return related to a $20,000 reduction to gross income. Wilfong had reduced gross income by this amount to account for an alleged error in the 1981 corporate return. He believed that Kayira's prior accountant had improperly included $20,000 of accounts receivable as gross income. Because the corporation was on the cash rather than accrual accounting method, accounts receivable should not have been reported as income. When Wilfong discovered the error in the 1981 return, he attempted to correct it by deducting $20,000 from Kayira's 1982 gross income. Wilfong made the adjustment without consulting Kayira, although

he attempted to consult the prior accountant, who would not return his telephone calls. The government's expert believed that Wilfong did not have information sufficient to justify the $20,000 gross income adjustment. The expert and the IRS auditor also testified that even if there had been an error in the 1981 return, Wilfong should have filed an amended return for that year, rather than simply adjusting gross income in the 1982 return.

The government offered Richard C. Walden as an expert to support its position that Wilfong had been negligent. Walden opined that Wilfong had failed to take the steps that a reasonably prudent return preparer would have taken under the circumstances. As a result, he concluded that Wilfong was negligent in understating the corporation's tax liability in the 1982 return.[5]

At the close of the evidence, the government moved for a directed verdict. The district court denied the motion but noted that there was "ample evidence in the record from which the jury could find that [Wilfong] was negligent." (Trial Tr. at 272.) Because he viewed it as a "close enough call," however, the district court submitted the case to the jury. (*Id.*) The jury rendered a verdict in Wilfong's favor, awarding a refund of the $100 penalty.

### B. The Fee Petition.

Subsequently, Wilfong petitioned for his litigation costs pursuant to 26 U.S.C. § 7430, arguing that the government's position in imposing the penalty was not substantially justified. Wilfong also requested that at least one of his attorneys be com-

---

4. On the 1983 return, however, Wilfong made adjusting journal entries eliminating approximately $80,000 in business deductions based on his conclusion that Kayira lacked adequate records to substantiate their business purpose.

5. Walden identified the following specific deficiencies in Wilfong's performance:

[T]he travel and entertainment expenses, there were questions there as to whether or not there was sufficient corroborating evidence to sustain the deductions. The baseball tickets, the cost of the baseball tickets that were deducted tends to indicate that another

instance of perhaps there was more information that was needed from the taxpayer before one could make a proper determination whether or not that was a legitimate deduction. The twenty thousand dollar item raises a question as to what was the proper handling in the prior year and was that then the right conclusion to make in adjusting it out in the current year. Some of the insurance expense perhaps was not documented enough to lead one to the conclusion that all of it was deductible.

(Trial Tr. at 251.)

pensated at the rate of $160 per hour, rather than at the $75 per hour statutory rate.[6] Wilfong argued that the higher rate was warranted because of the limited availability of counsel in the area qualified to handle a tax litigation matter. After two hearings on the motion, the district court allowed fees and costs. In its oral ruling, the district court concluded that the government's position was not substantially justified and that fees in excess of the $75 per hour statutory rate were appropriate. The government raises both of these issues on appeal.

## II. ANALYSIS

We review the district court's award of litigation costs under section 7430 for an abuse of discretion. *Creske v. Comm'r of Internal Revenue*, 896 F.2d 250, 252 (7th Cir.1990); *Zinniel v. Comm'r of Internal Revenue*, 883 F.2d 1350, 1355 (7th Cir.1989), *cert. denied*, 494 U.S. 1078, 110 S.Ct. 1805, 108 L.Ed.2d 936 (1990); *see also Pierce v. Underwood*, 487 U.S. 552, 559–63, 108 S.Ct. 2541, 2547–49, 101 L.Ed.2d 490 (1988) (applying an abuse of discretion standard to review of an award of attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)). Although this is a deferential standard, we must nonetheless conduct a "meaningful review" of the district court's decision. *Creske*, 896 F.2d at 252; *Zinniel*, 883 F.2d at 1357.

Before litigation costs may be awarded under section 7430(a), the taxpayer must be a "prevailing party" under subsection 7430(c)(4).[7] A "prevailing party" is one who establishes (1) that the government's position "was not substantially jus-

tified," (2) that he has "substantially prevailed with respect to the amount in controversy" or with respect to "the most significant issue or set of issues presented," and (3) that he has satisfied the requirements both of 28 U.S.C. § 2412(d)(1)(B), by submitting a qualifying application for fees within thirty days of the entry of final judgment, and of 28 U.S.C. § 2412(d)(2)(B), by attesting that his net worth did not exceed $2,000,000 when the action was filed. 26 U.S.C. § 7430(c)(4)(A); *see also Kenagy v. United States*, 942 F.2d 459, 463 (8th Cir.1991). There is no question that Wilfong substantially prevailed with respect to the amount in controversy or that his fee petition satisfied the requirements of section 2412(d). Because we find that the government's position was substantially justified, however, Wilfong is not a prevailing party under section 7430(c)(4)(A).

We begin by examining the reasons supporting the district court's conclusion that the government's position lacked substantial justification. *See Zinniel*, 883 F.2d at 135. In doing so, we are mindful that the government's position can be justified even if ultimately rejected by the court or jury. The government's position is substantially justified "if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Pierce*, 487 U.S. at 566 n. 2, 108 S.Ct. at 2550 n. 2; *see also Pate v. United States*, 982 F.2d 457, 459 (10th Cir.1993); *Young v. Sullivan*, 972 F.2d 830, 835 (7th Cir.1992); *Cummings v. Sullivan*, 950 F.2d 492, 497 (7th Cir.1991). The district court determined that the government's position lacked substantial justification for three reasons.

**6.** Section 7430(c)(1)(B)(iii) provides for the recovery of:

reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding, except that such fees shall not be in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such proceeding, justifies a higher rate.

**7.** To establish an entitlement to litigation costs, a taxpayer must meet three requirements. He

must show that he exhausted all administrative remedies prior to commencing the civil action, that he is a prevailing party under section 7430(c)(4)(A), and that the amount of his fee request is reasonable. *Zinniel*, 883 F.2d at 1356; *see also Pate v. United States*, 982 F.2d 457, 459 (10th Cir.1993); *Weiss v. Comm'r of Internal Revenue*, 850 F.2d 111, 114 (2d Cir.1988). There is no dispute that Wilfong exhausted his available administrative remedies. Moreover, we need not reach the reasonableness of the fee petition because of our finding that Wilfong is not a prevailing party.

The district court initially emphasized its respect for Wilfong's determination and fortitude in contesting the return-preparer penalty. The district court explained that most return preparers simply would have paid the modest penalty and forgotten it, but:

> Fortunately, and I say fortunately, because I think that he is to be commended for having the guts, stamina, [and] pride in his own abilities, Mr. Wilfong did not pay the hundred bucks and forget it and charge it off and deduct it from next year's income tax.... He decide[d] to challenge the Government on it, and a jury sitting in that jury box over there, six people, said he was right, and the Government was wrong.

(July 15, 1991 Tr. at 33–34.) Given the jury's verdict, the district court did not believe that Wilfong should be burdened with a legal bill in excess of $26,000:

> It's cost him so far some twenty-six thousand dollars and change to prove he was right and the Government was wrong, and to add insult to [in]jury, the Government now wants him to eat that twenty-six thousand dollars. I do not think that's what Congress intended ... in passing the statutes that are involved here.

(*Id.* at 34.)

■ The district court obviously admired Wilfong's accomplishment. Indeed, the court's comments reflect his admiration for an individual who stood by his principles and challenged his government. Although we may share the district court's respect for Wilfong's determination and pride in his work product, those feelings have no relation to whether the government's litigation position was substantially justified. Respect or admiration for a litigant is not relevant to whether the government's position had a reasonable basis in law and fact. The first reason advanced by the district court therefore provides no support for its conclusion.

■ The district court also thought it important that the penalty was imposed against a licensed CPA, rather than, for example, a baseball player who had prepared his own tax return:

> Had the Government imposed a penalty against some three million dollar baseball player for being negligent in preparing, oh, let's say, his own tax return, and I am not so sure whether the statute really applies to that, but to make my point, and you fined him one hundred dollars, you assess the civil penalty of one hundred dollars, that is an entirely different circumstance. When you say that our three million dollar baseball player is not a very good tax preparer, so what? Who cares? But when you say that a CPA who is licensed and has to answer to various disciplinary boards, just like lawyers do, when you say, and who has malpractice insurance, and insurance carriers who no doubt get very upset when they see things like this, but when you say that a CPA like that is negligent, different story, and *I think my point is that the facts that would substantially justify the imposition of a civil penalty in that situation are different than what we have with the baseball player, and of course that's what we have got in this case.*

(*Id.* at 34–35 (emphasis added).) The district court's comments seem to suggest that a higher standard is warranted whenever a return-preparer penalty is imposed against a licensed professional such as Wilfong because of the possible professional implications of the penalty. (*See also id.* at 24–25.) However, we find that a higher standard for professional return preparers cannot be supported.

The district court's analysis assumes that section 6694(a) is directed at both professionals, such as Wilfong, and non-professionals who prepare their own returns. But section 6694(a) actually imposes penalties only against professional and commercial return preparers and does not apply to individuals who prepare income tax returns for themselves or even for their friends and relatives. *See Goulding v. United States*, 957 F.2d 1420, 1424 (7th Cir.1992). Section 6694(a) authorizes penalties against any "income tax return preparer." 26 U.S.C. § 7701(a)(36) defines that term to

include "any person who prepares for compensation, or who employs one or more persons to prepare for compensation, any return of tax imposed by subtitle A or any claim for refund of tax imposed by subtitle A." We explained in *Goulding* that this "was intended to limit application of the penalty provisions to professional and commercial preparers." 957 F.2d at 1424. Indeed, section 6694 was but one of several provisions in the Tax Reform Act of 1976 designed to regulate the conduct of paid income tax return preparers. *Id.; see also Brockhouse v. United States,* 749 F.2d 1248, 1251 (7th Cir.1984).[8] These provisions reflect "congressional concern over various abuses by preparers in the reporting of clients' income tax liabilities." *United States v. Ernst & Whinney,* 735 F.2d 1296, 1302 (11th Cir.1984), *cert. denied,* 470 U.S. 1050, 105 S.Ct. 1748, 84 L.Ed.2d 814 (1985); *see also Brockhouse,* 749 F.2d at 1251. Because section 6694(a) applies only to one who receives compensation for preparing another's tax return, it has no application to an individual, such as the $3,000,-000 baseball player envisioned by the district court, who prepares his own return. There is therefore no statutory basis for applying a heightened "substantial justification" standard to a paid professional.

Nor does the statute provide any basis for distinguishing between professional preparers and other paid preparers. Treasury Regulation § 301.7701–15(a)(3) explains that the term "income tax return preparer" may apply "without regard to educational qualifications and professional status requirements." *See also* H.R.Rep. No. 658, 94th Cong., 2d Sess. 275, *reprinted in* 1976 U.S.C.C.A.N. 2897, 3171. This makes plain that an individual need not be a CPA to qualify as an "income tax return preparer." It is enough that the individual has prepared an income tax return for compensation. Indeed, in reviewing the legislative history of section 6694, we have explained that Congress was primarily "concerned with abuses by 'commercial' preparers—those who are not accountants and lawyers...." However, Congress "determined that regulation of all preparers was appropriate." *Brockhouse,* 749 F.2d at 1251 (citing H.R.Rep. No. 658, 94th Cong., 2d Sess. 274–75, *reprinted in* 1976 U.S.C.C.A.N. at 3169–70); *see also Goulding,* 957 F.2d at 1424.

■ Thus, although the penalty provisions apply to CPAs and non-CPAs alike, there is nothing in the statute, the legislative history, or the case law suggesting that a higher standard applies when the government imposes a penalty against a licensed professional. *See* H.R.Rep. No. 658, 94th Cong., 2d Sess. 274, *reprinted in* 1976 U.S.C.C.A.N. at 3170 ("it is difficult to single out any one group alone for special regulation.").[9] The same standard therefore applies under section 6694(a) to licensed professionals and to other paid return preparers who satisfy the requirements of section 7701(a)(36). Either type of paid preparer is negligent if her work evidences a " 'lack of due care or [the] failure to do what a reasonable and ordinarily prudent person would do under the circumstances.' " *Brockhouse,* 749 F.2d at 1251 (quoting *Marcello v. Comm'r,* 380 F.2d 499, 506 (5th Cir.1967), *cert. denied,* 389 U.S. 1044, 88 S.Ct. 787, 19 L.Ed.2d 835 (1968)); *see also Goulding,* 957 F.2d at

---

**8.** These provisions were included because earlier versions of the Internal Revenue Code imposed civil penalties only on the taxpayer himself, rather than on a paid return preparer. *See* H.R.Rep. No. 658, 94th Cong., 2d Sess. 273, *reprinted in* 1976 U.S.C.C.A.N. 2897, 3169. Paid return preparers were subject only to criminal fraud penalties for willfully assisting in the preparation of a fraudulent return. *Id.* Because of the prevalence of paid income tax return preparers, however, Congress decided to more closely regulate their conduct by imposing disclosure requirements and providing for civil penalties for improper conduct. *Id.* at 274–75, *reprinted in* 1976 U.S.C.C.A.N. at 3169–71; *see also Goulding,* 957 F.2d at 1424.

**9.** To the extent the district court's reasoning has some intuitive appeal, we believe the converse of that reasoning may be more appropriate. Arguably, it is the licensed CPA, and not the government, who should be held to a higher standard precisely because the CPA is a professional who presumably is aware of the applicable rules and regulations.

1429.[10] We accordingly disagree that the facts necessary to substantially justify imposition of a penalty against a licensed professional must be more compelling than those needed to justify a penalty against any other return preparer. The fact that Wilfong is a professional accountant has no bearing on whether the government's position was substantially justified.

■ Finally, the district court relied on the jury's verdict as an indication of the strength of the government's position.[11] The court acknowledged that the verdict did not necessarily establish a lack of substantial justification but nonetheless believed it was one factor to be "thrown on the scales" in assessing the reasonableness of the government's position. (July 15, 1991 Tr. at 35–36.)

■ We agree that the jury's verdict is relevant and that it should have been considered by the district court. *See Anthony v. United States*, 987 F.2d 670, 674 (10th Cir.1993); *Heasley v. Comm'r of Internal Revenue*, 967 F.2d 116, 120 (5th Cir.1992). However, the verdict is not determinative of the merits of the government's position. *See Zinniel*, 883 F.2d at 1356 (parties in agreement that Commissioner's "failure to prevail in the underlying litigation does not require a determination that his position was unreasonable"); *see also Estate of Johnson v. Comm'r*, 985 F.2d 1315, 1318 (5th Cir.1993); *Bowles v. United States*, 947 F.2d 91, 94 (4th Cir.1991) ("failure to prevail in the underlying litigation does not mandate a determination of unreasonableness."); *Phillips v. Comm'r of Internal Revenue*, 851 F.2d 1492, 1499 (D.C.Cir. 1988). Because the jury decided only that Wilfong had prevailed by a preponderance of the evidence, its verdict does not necessarily indicate that the government's posi-tion lacked a reasonable basis in law or fact. As a result, that verdict cannot be the sole factor supporting a finding that the government's position lacked substantial justification. Rather, the district court must articulate specific reasons in addition to the jury's verdict that support its finding. *Cf. Creske*, 896 F.2d at 252 (tax court must delineate reasons for denying motion for litigation costs); *see also Anthony*, 987 F.2d at 675 (district court must provide reasoned explanation for amount of fee award).

Because the first two factors considered by the district court have no bearing on the reasonableness of the government's position, the jury's verdict was the only relevant consideration weighed here. The district court failed to articulate any other basis for finding the government's position unjustified. Without more, the fact of the verdict is insufficient to support an award of litigation costs. Accordingly, we agree with the government that the award must be vacated.

Having reached this conclusion, we ordinarily would remand to the district court, requesting that it further explain its finding that the government's position lacked substantial justification. However, our review of the trial record convinces us that the government was substantially justified in penalizing Wilfong. Accordingly, there is no basis for an award of litigation costs, and we therefore see no reason to remand.

As an individual seeking a refund, Wilfong bore the burden at trial "of proving an absence of negligent disregard of rules or regulations resulting in an understatement of tax liability." *Goulding*, 957 F.2d at 1429; *see also Brockhouse*, 749 F.2d at 1251. As we previously explained, the term "negligent disregard" means " 'a lack of due care or failure to do what a reason-

---

**10.** We noted in *Brockhouse* that this standard is identical to that utilized under 26 U.S.C. § 6653(a), which applied to the negligence of taxpayers in the preparation of their own returns. "Congress has indicated that § 6694(a) is to be interpreted in a manner similar to § 6653(a)." 749 F.2d at 1252 n. 4 (citing H.R.Rep. No. 658, 94th Cong., 2d Sess. 278, *reprinted in* 1976 U.S.C.C.A.N. at 3174); *see also United States v. Bailey*, 789 F.Supp. 788, 812 (N.D.Tex.1992). Congressional intent that these penalty provisions be applied consistently reinforces our conclusion that the government cannot be held to a higher standard in imposing a penalty against a licensed professional.

**11.** The district court's first rationale—its respect for Wilfong's determination and fortitude—also was grounded on plaintiff's success in the underlying litigation. (*See* July 15, 1991 Tr. at 33–34.)

able and ordinarily prudent person would do under the circumstances.' " *Brockhouse*, 749 F.2d at 1251 (quoting *Marcello v. Comm'r*, 380 F.2d 499, 506 (5th Cir. 1967), *cert. denied*, 389 U.S. 1044, 88 S.Ct. 787, 19 L.Ed.2d 835 (1968)). Thus, a "preparer is required to act as a reasonable, prudent person with respect to the information supplied to him," and if that information " 'would lead a reasonable, prudent preparer to seek additional information, it is negligent not to do so.' " *Goulding*, 957 F.2d at 1429 (quoting *Brockhouse*, 749 F.2d at 1252). It is in this context that we consider whether the government's position in imposing a penalty was justified.

Wilfong maintained at trial that he took all steps that a reasonable, prudent return preparer would have taken in the circumstances. He testified that he and Kayira had several meetings to discuss whether expenditures should be classified as business or personal. Because Wilfong found no reason to doubt his client's veracity, he relied on what Kayira told him in preparing the 1982 return. The jury apparently found Wilfong's testimony credible, and although the government disagrees with the jury's verdict, it has not questioned the sufficiency of the supporting evidence.

Yet, the government produced substantial evidence calling into question the legitimacy of Wilfong's conduct. In some instances, the government's witnesses directly contradicted Wilfong's testimony. In others, they emphasized deficiencies in Wilfong's performance. Based upon all of the relevant facts and circumstances, the government's expert believed that Wilfong was negligent in understating the corporation's tax liability on the 1982 return. We have detailed the government's other evidence above and need not repeat it here. Suffice it to say that the trial evidence frequently conflicted. Resolution of the case turned on the jury's determinations of witness credibility. The verdict suggests that the jury credited Wilfong's testimony and discredited the testimony of the government's witnesses. Such credibility determinations are uniquely within the province of the jury, and the government has not challenged those credibility assessments on appeal. However, the government argues that when resolution of a case hinges to such an extent on determinations of witness credibility, it is an abuse of discretion to find that the government's position was not substantially justified. We agree.

In *Temp Tech Indus., Inc. v. NLRB*, 756 F.2d 586 (7th Cir.1985), we considered a fee application under a statute that similarly focused on the reasonableness of the government's position. The NLRB had dismissed the fee application, in part because resolution of the primary issue in the case turned on an assessment of the credibility of the Board's major witness, an employee of the company charged with Labor Act violations. *Id.* at 588. We affirmed the dismissal, explaining:

> [W]e cannot find that the [NLRB] General Counsel's decision to litigate an issue that turned on a credibility assessment was itself unreasonable; the fact that an [administrative law judge] might make an adverse finding on a credibility issue does not, in and of itself, deprive the General Counsel's position of a basis in fact.

*Id.* at 590; *see also Creske v. Comm'r of Internal Revenue*, 946 F.2d 43, 45 (7th Cir.1991); *Mester Mfg. Co. v. INS*, 900 F.2d 201, 204 (9th Cir.1990).

Had the jury credited the government's evidence and discredited Wilfong's testimony, there is no question that the evidence would have been sufficient to support a verdict for the government, just as it was sufficient to support the verdict for Wilfong. Both the district court and Wilfong seemingly agree. When the government moved for a directed verdict at the close of the evidence, the district court denied the motion but expressed its belief that the government had produced sufficient evidence of negligence to support a verdict in its favor:

> There is certainly evidence, there is ample evidence in the record from which the jury could find that [Wilfong] was negligent, but they don't have to find that, if they have got the converse. The burden is on the plaintiff to prove he wasn't negligent, and that might be a close call in the jury's mind. It's a close enough call in my mind that I am going to let the

jury decide it. I think there is enough there to go to the jury on.

(Trial Tr. at 272–73.) [12] Wilfong interprets the district court's comments as we do, arguing in his brief that the district court "simply explained that should the jury believe all of the Government's witnesses and disbelieve Wilfong as to the facts, the jury would be able to find that Wilfong was negligent." (Appellee's Br. at 13; *see also id.* at 26–27.) We agree with that assessment. However, we differ with Wilfong and the district court as to its effect on an award of fees. Because the government's evidence, if credited by the trier of fact, was sufficient to support a verdict in its favor, there necessarily was a reasonable basis in fact for the government's position. *See District No. 8, Int'l Ass'n of Machinists & Aerospace Workers v. Clearing, A Div. of U.S. Indus., Inc.,* 807 F.2d 618, 622 (7th Cir.1986).[13] The district court therefore abused its discretion in finding that the government's position lacked substantial justification. Because we find the government's position substantially justified, Wilfong is not a "prevailing party" under section 7430(c)(4)(A). Accordingly, he does not qualify for an award of litigation costs.[14]

### III. CONCLUSION

For the foregoing reasons, we reverse that portion of the district court's judgment awarding Wilfong his attorneys' fees and costs.

REVERSED.

12. In awarding litigation costs, the district court addressed the government's argument that a finding of no substantial justification would be inconsistent with the court's comments in denying the motion for a directed verdict:

I don't think that that finding is inconsistent in any way with my denial of the motion for summary judgment or with my denial of the motion for directed verdict. It is two different things entirely. For the one thing, I mean, I would have been foolhardy to direct a verdict in a case like this after we have gone that far. Far better to let it go to the jury and let the jury decide it.

I think also that the plaintiff in this case, Mr. Wilfong was entitled, he paid his money, and he was entitled to hear that jury say and have the public know that he had been found by a jury not to be negligent and not to get shortchanged by having the Court direct a verdict. So, I don't think that that's [sic] inconsistent in any way with my findings here today.

(July 15, 1991 Tr. at 36.) Wilfong argues that the court's comments indicate that, if anything, the court was inclined to direct a verdict in his rather than the government's favor. We are not persuaded that the district court's comments can be interpreted in the way Wilfong suggests. The district court's refusal to grant a directed verdict in favor of the government reveals only that the court found Wilfong's case strong enough to reach the jury, nothing more. In fact, the court plainly stated at the time that there was enough evidence to support a jury verdict in favor of the *government.* Certainly, the district court never indicated that it would have been more inclined to direct a verdict for Wilfong than for the government. It was the government, and not Wilfong, that had moved for a directed verdict in the first place. Moreover, our review of the trial evidence suggests that it would have been imprudent to direct a verdict in Wilfong's favor.

Furthermore, we respectfully disagree with the district court's conclusion that its decision to award litigation costs was consistent with its comments in denying the government's motion for a directed verdict. In stating that the government had produced sufficient evidence to support a finding of negligence, the district court necessarily opined that the government had a reasonable basis in fact to impose the return preparer penalty. A subsequent finding that the government's position was not substantially justified was inconsistent with this earlier conclusion.

13. Arguably, there may be exceptions to this rule. For example, if the government were to ground its case on inherently incredible or perjured testimony, our decision today would not shield it from an award of litigation costs. The same may be true if the plaintiff could show that the government imposed the penalty for an improper purpose. There is no such evidence in the instant case. As a result, we need not address whether these hypothetical circumstances would support a finding that the government's position lacked substantial justification even where its evidence was sufficient to support a verdict in its favor.

14. Because we conclude that the district court abused its discretion in awarding litigation costs, we need not consider the government's argument that the district court erred in awarding fees at an hourly rate in excess of the $75 per hour statutory rate.