SHEARN MOODY, JR., Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Moody v. Commissioner
Docket Nos. 2566-88, 1659-89.
United States Tax Court
T.C. Memo 1995-440; 1995 Tax Ct. Memo LEXIS 437; 70 T.C.M. (CCH) 678; September 14, 1995, Filed *437 William R. Cousins III, for petitioner. Melanie R. Urban and David E. Whitcomb, for respondent. WRIGHT, Judge WRIGHT
MEMORANDUM OPINION WRIGHT, Judge: This matter is before the Court on petitioner's motion for litigation and administrative costs under section 7430[1] and Rule 231. The merits of the underlying cases were decided in Moody v. Commissioner, T.C. Memo. 1995-195, filed May 2, 1995. To the extent necessary for the disposition of this motion, the facts and holdings in T.C. Memo. 1995-195 are incorporated by this reference. References to petitioner are to Shearn Moody, Jr. The issue presented is whether petitioner has established that respondent's position in the underlying litigation and administrative proceedings, factually and legally, was not substantially justified. As discussed *438 in the ensuing opinion, we hold that petitioner has not made this showing. Thus, an order and decision will be entered in each case in which we deny petitioner's motion. Under section 7430(a), a "prevailing party", in specified civil tax proceedings, may be awarded a judgment for reasonable administrative and litigation costs. To be a prevailing party under section 7430(c)(4), the party seeking such award must: (1) Establish that the position of the United States in the proceeding was not substantially justified, sec. 7430(c)(4)(A)(i); (2) substantially prevail with respect to the amount in controversy, or have substantially prevailed with respect to the most significant issue or set of issues presented, sec. 7430(c)(4)(A)(ii); and (3) establish that he or she has a net worth that did not exceed $ 2 million at the time the proceeding was commenced, sec. 7430(c)(4)(A)(iii). Additionally, a judgment for administrative and litigation costs will not be awarded under section 7430(a) unless the Court determines: (1) That the prevailing party has exhausted the administrative remedies available with the Internal Revenue Service, sec. 7430(b)(1); and (2) that the prevailing party has not *439 unreasonably protracted the court proceeding, sec. 7430(b)(4). See Bragg v. Commissioner, 102 T.C. 715, 717 (1994); Polyco, Inc. v. Commissioner, 91 T.C. 963, 966-967 (1988). A party seeking costs bears the burden of proving that he is entitled to them. Rule 232(e); Bragg v. Commissioner, supra;Gantner v. Commissioner, 92 T.C. 192, 197 (1989), affd. 905 F.2d 241 (8th Cir. 1990). Respondent does not contest that petitioner has substantially prevailed in the underlying litigation, has met the net worth requirement, has exhausted the administrative remedies, and has not unreasonably protracted the proceedings. Thus, we turn to the question whether respondent's position was substantially justified. Whether the position of respondent in this proceeding was substantially justified depends on whether respondent's position and actions were reasonable in light of the facts of the case and applicable precedents. Bragg v. Commissioner, 102 T.C. at 716; Price v. Commissioner, 102 T.C. 660, 662 (1994); *440 Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988). "Substantially justified" means "'justified in substance or in the main'--that is, justified to a degree that could satisfy a reasonable person", Heasley v. Commissioner, 967 F.2d 116, 120 (5th Cir. 1992) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)). [2] The fact that respondent ultimately is unsuccessful at litigation or concedes the case is not necessarily determinative that respondent's position was unreasonable. Price v. Commissioner, supra at 662-665; Wasie v. Commissioner, 86 T.C. 962, 969 (1986). *441 Generally, when respondent presents evidence which, if credited by the Court, is sufficient to support a decision in respondent's favor, there will necessarily be a reasonable basis for respondent's position. See Wilfong v. United States, 991 F.2d 359, 369 (7th Cir. 1993). In general, section 4941(a)(1) and (b)(1) impose upon a "disqualified person"--such as petitioner--excise taxes computed as specified percentages of the "amount involved" in each act of "self-dealing" between the disqualified person and a private foundation. The primary issue for our consideration in the underlying cases was whether petitioner was liable for such taxes based upon alleged acts of self-dealing with respect to the assets of, or grants made by, a private foundation called the Moody Foundation. We held that petitioner was so liable, but in amounts very substantially less than those asserted by respondent. Petitioner now assails respondent's position as to the issues addressed in the underlying opinion; we address them in order. Hotel Washington
Petitioner was one of three trustees of the Moody Foundation, a private charity that owned very substantial assets. *442 The Moody Foundation is organized for the benefit of the people of Texas. Among other things, the Moody Foundation owns 50 percent of the stock of a corporation named Gal-Tex. A Moody family trust owns the other 50 percent. Petitioner was a member of the Gal-Tex board of directors. Gal-Tex owns a number of assets, including a property in Washington, D.C., named the Hotel Washington. Although petitioner received complimentary use of a room, he and his guests incurred substantial unpaid charges at the Hotel Washington. Respondent asserted that petitioner's activities in this regard constituted "indirect" self-dealing with Moody Foundation assets within the meaning of section 4941. Respondent's premise is that a person in petitioner's position can, in some circumstances, engage in indirect self-dealing with a private foundations's assets by engaging in transactions with an organization that is controlled by the private foundation. In making this argument, respondent relied upon section 53.4941(d)-1(b)(5), Foundation Excise Tax Regs. That regulation provides, in part, that an organization is controlled by a private foundation if the foundation, or the foundation and a persons in petitioner's *443 position, "are able, in fact, to control the organization (even if their aggregate voting power is less than 50 percent of the total voting power of the organization's governing body)". We believe that respondent's position is well founded consistent with section 4941, and, thus, substantially justified in law. As we said in our opinion, "we have little trouble with respondent's premise" as to the applicability of section 4941 in such a situation. The question then arises whether respondent was justified with respect to the facts supporting her determination that the Moody Foundation was able to control Gal-Tex. The evidence showed that petitioner was a member of the board of directors of Gal-Tex, the corporation that owned the Hotel Washington, as well as one of the trustees of the Moody Foundation, which in turn owned half the stock of Gal-Tex. Moreover, at the proceeding below, there was no dispute that petitioner and his friends and associates ran up very substantial charges at the hotel, and that these charges were never paid. On this evidence, respondent was clearly justified in taking the position that the Moody Foundation was able in fact to control Gal-Tex, at least to the *444 extent that petitioner and his associates were permitted to run up unpaid charges at the Hotel Washington. See sec. 53.4941(d)-1(b)(5), Foundation Excise Tax Regs. We nevertheless held that, taking into account all the facts and circumstances, the Moody Foundation did not possess actual control over the activities of Gal-Tex, nor the Hotel Washington. Thus, as to the unpaid hotel charges, petitioner did not engage in self-dealing with the assets of the Moody Foundation, and therefore, he was not liable for the excise taxes concerning those charges. Our determination that petitioner was not subject to those taxes was, in substantial measure, based upon our appraisal of testimony by hotel officials. They indicated credibly that the hotel management sought reimbursement of the charges at issue not only from petitioner's estate in bankruptcy but also from the Moody Foundation itself. The Moody Foundation refused to pay on the reasonable grounds that petitioner's charges did not constitute foundation business. Our evaluation of the hotel officials' testimony was corroborated by other evidence, including our impression of petitioner himself, principally as gleaned from his own testimony. *445 This evidence cumulatively persuaded us that petitioner could not use his influence in the Moody Foundation to control Gal-Tex, despite substantial circumstantial evidence indicating that his unpaid hotel charges were a result of such influence. Had we resolved those issues of credibility differently, we might have found that petitioner exercised sufficient control to be said to have engaged in self-dealing with Moody Foundation assets. Thus, although we found for petitioner, we cannot say that respondent's position that the unpaid hotel charges constitute self-dealing was not "substantially justified" on the basis of the evidence available. Moody Foundation Grants
Petitioner was also involved in the activities of a number of organizations--the "grantees"--which obtained their funding in the form of grants from the Moody Foundation. These organizations engaged in activities in which petitioner was interested. Respondent characterized the Moody Foundation grants at issue under three categories--the Caddy grants, the Pabst grants, and the Bauman grants--naming the categories after individuals who were involved, in varying measures, with the grantee organizations. The evidence *446 suggested that the grantee organizations expended much of the Moody Foundation grants in questionable ways, often to the benefit of their promoters. The Court was faced with determining petitioner's liability for excise taxes based upon alleged self-dealing with the amounts of the grants. This required our evaluation of the part played by petitioner in each grantee organization, especially concerning petitioner's role in each grantee's obtaining money from the Moody Foundation. In so doing, we were also called upon to evaluate the part played by the grantees' principals in the solicitation and administration of the award. We also had to dissect the relationship between petitioner and those individuals, and the degree of petitioner's control of the Moody Foundation assets. As to the issue of the grants, respondent made the legal argument that the "amount involved" in petitioner's alleged acts of self-dealing with the grantee organizations "is measured by the amount of the grants made by the Moody Foundation". Respondent contended that: "It does not matter what the self-dealer receives, or how much the self-dealer benefits." Instead, "the focus here is on what the foundation gives *447 at the time of the self-dealing". Respondent cited material from a Congressional staff report in support of this contention. We disagreed with respondent's analysis as it was applied to these cases. We did not consider the "amount involved" in these cases to be the entire amount of the grants at issue. Rather, we held that the amount involved was limited to the amounts directly or indirectly transferred to petitioner, or used by him or for his benefit. Although we disagreed with the terminology used by respondent to justify the asserted deficiencies, we did not, and do not, find respondent's legal position unjustified. If petitioner had distributed the amounts at issue to his friends and pet causes--as if such amounts were his and not the Foundation's--his actions might have been self-dealing in the form of "use" of foundation assets by a disqualified person. In fact, in the underlying opinion, we noted that respondent's theory of attributing the entire amount of the grants at issue to petitioner's self-dealing "might be acceptable if the evidence demonstrated that petitioner was the mastermind behind the issuance of the grants at issue." [3]
*448 We found, however, that petitioner's association with these organizations was often conducted through, or influenced by, individuals who took advantage of petitioner's nature. They insinuated themselves into petitioner's confidence and then utilized him to assist in obtaining Moody Foundation funds for themselves, their associates, or their pet projects. As described by a senior member of the Moody Foundation staff, one such individual "was a con man, and he had done a number on--he had Shearn convinced that he was the next thing to God." As to another such individual, the underlying opinion notes that: "By all accounts, [the individual] was aggressive and strong-willed and dominated the relationship with petitioner." In the underlying opinion, we stated Our impression of petitioner in this case is that he is reasonably intelligent, but naive and given to conspiracy theories. He is generous, but he trusts too readily those who are forceful or persuasive or who tell him what he likes to hear. He is garrulous, and he has difficulty in concentrating on the matter at hand. He has demonstrated no practical appreciation for the amounts of money involved in the various grants at issue, *449 nor has he demonstrated anything approaching even an adequate business sense.
In view of our conclusion, we determined that petitioner was not the mastermind behind the grant of Moody Foundation moneys to the grantee entities with which he was involved. As we explained: We conclude that others brought about the misuse of Moody Foundation funds after the awards were made. Petitioner was not a mastermind; rather he was manipulated by those who sought to get Moody Foundation money.
This general conclusion was subject to some notable exceptions. On a number of occasions, money from the grants at issue went to the benefit of petitioner or, at his behest, to his friends and associates. Our findings accordingly specified a number of instances wherein moneys from the Moody Foundation were directly or indirectly transferred to petitioner, or used by him or for his benefit. We held that the excise taxes imposed by section 4941(a)(1) and (b)(1) for acts of self-dealing were properly imposed upon petitioner for these amounts. As to the other amounts, respondent presented substantial evidence, in the form of testimony of participants in the grantee organizations, or in the grant *450 process. Some of that evidence offered general support for respondent's contention that petitioner understood and participated in the misuse of Moody Foundation funds. The evidence was plausible; it was not perjured nor inherently incredible. We nevertheless found that respondent's evidence was outweighed by other evidence. The principal factor in evaluating that other evidence was once again our perception of petitioner's nature and general capabilities. Also important was our evaluation of other participants' testimony. Our evaluation took into account their possible self-interest in deflecting blame from themselves for the misuse of Moody Foundation assets. We also considered the positions of those witnesses with respect to petitioner, the grantee organizations, and the Moody Foundation itself. We noted their awareness, or lack thereof, of other pertinent facts and circumstances. Our findings in this regard were not made easily. We recognized that respondent's position has a reasonable basis in the evidence. That we may ultimately have reached different conclusions as to the testimony of participants does not mean that respondent's decisions to present such testimony is unreasonable. *451 As one court has explained, "when resolution of a case hinges to such an extent on determination of witness credibility, it is an abuse of discretion to find that the government's position was not substantially justified". Wilfong v. United States, 991 F.2d at 368. Petitioner's Willful or Flagrant Conduct
Respondent also asserted that petitioner was liable on two other bases. The first of these was section 4941(a)(2), which imposes an excise tax upon a foundation manager who participates in an act of self-dealing between a disqualified person and a private foundation. To prevail on this issue, respondent was required to prove that the foundation manager acted knowingly and that his participation was willful and not due to reasonable cause. We held that, with a few exceptions, respondent had not met the high burden of proof needed to impose liability upon petitioner, in his status as a foundation manager, under this section. We also found, however, that there were instances wherein respondent had shown, with clear and convincing evidence, that petitioner acted knowingly, willfully, and without reasonable cause in acts of self-dealing. Section *452 6684(2) imposes a penalty upon a person who becomes liable for a tax under section 4941 for actions that are willful and flagrant, and not due to reasonable cause. Respondent also bears the burden of establishing liability under section 6684(2). We found that those instances for which additions to tax under section 6684(2) should be imposed are the same as those that subjected petitioner to the foundation manager excise taxes under section 4941(a)(2). For reasons already discussed, we hold that respondent's assertion of petitioner's liability under sections 4941(a)(2) and 6684(2) was substantially justified. If petitioner had "masterminded" obtaining and expending the amounts at issue, respondent would have a strong case for imposing liability under those provisions. The question of petitioner's role as a mastermind was, again, a question of credibility. Respondent presented relevant and plausible testimony that, if accepted, would have furnished a basis for finding that petitioner acted willfully, and even flagrantly. In the underlying opinion, we stated: "We readily understand respondent's suspicions as to petitioner's knowing participation in the acts of self-dealing involved *453 here." We nevertheless found respondent's evidence insufficient to overcome other evidence that the misuse of Moody Foundation funds was due to the actions of others, who exploited petitioner's idiosyncrasies and naivete. Thus, with a few exceptions, we found that petitioner had not engaged in the willful or flagrant actions required to bring about liability under sections 4941(a)(2) or 6684(2). In sum, respondent was fully justified in attempting to prove petitioner's liability for the amounts in issue; that we found such proof insufficient does not mean that the effort was unjustified. As a final matter we note that respondent, at trial, conceded her administrative determination of deficiencies under sections 4941(b)(2) and 4945(a) and (b). Petitioner, in his motion for litigation and administrative costs, does not contend that these determinations were not substantially justified within the meaning of section 7430. We endorse petitioner's decision not to have made such a contention. See Price v. Commissioner, 102 T.C. 660, 664-665 (1994). In view of the foregoing, Appropriate orders and decisions will be entered. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. For civil tax actions or proceedings commenced after Dec. 31, 1985, sec. 1551(d)(1) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2752, changed the language describing the position of the United States from "was unreasonable" to "was not substantially justified". This and other courts, however, have held that the "substantially justified" standard is not a departure from the previous reasonableness standard. Bragg v. Commissioner, 102 T.C. 715, 717 n.2 (1994); Sokol v. Commissioner, 92 T.C. 760, 763-764↩ n.7 (1989).
3. Our underlying opinion recognizes that some of the grant moneys at issue were expended for purposes that were consistent with Moody Foundation charitable guidelines. Notwithstanding the semantics of her argument, respondent also recognized that fact. At least to some extent, she took those "proper" expenditures into account in making the determinations there at issue. It must also be noted that the evidence reveals a multitude of questionable transactions and a pervasive misuse of Moody Foundation funds. Thus, respondent was substantially justified in putting petitioner to his proof as to the exclusion from the "amount involved" of other amounts allegedly expended for proper purposes. We note that petitioner's motion papers do not specify which of any allegedly proper expenditures respondent may have unreasonably included in the "amount involved".↩