**James HANRAHAN, Plaintiff,**

v.

**Donna M. SHALALA,[1] Secretary of Health and Human Services, Defendant.**

No. 91–C–981.

United States District Court, E.D. Wisconsin.

Sept. 10, 1993.

As Amended Sept. 17, 1993.

---

1. Secretary Donna M. Shalala is substituted for Louis W. Sullivan, M.D., as defendant pursuant to Fed.R.Civ.P. 25(d)(1).

Thomas E. Busch, S.C., Milwaukee, WI, for plaintiff.

Charles A. Guadagnino, Asst. U.S. Atty., Milwaukee, WI, for defendant.

### DECISION AND ORDER

WARREN, Senior District Judge.

Before the Court is plaintiff's Motion for Award of Attorney's Fees Pursuant to the Social Security Act ("SSA"), 42 U.S.C. § 406(b), and the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. For the following reasons, the Court hereby grants this motion and awards attorney's fees and costs under the EAJA in the amount of $7,965.89 to Thomas E. Bush, counsel for the plaintiff, and attorney's fees under the SSA in the amount of $2,941.25 to the plaintiff, James Hanrahan.

### I. BACKGROUND

#### A. PROCEDURAL BACKGROUND

On June 9, 1989, the plaintiff, James Hanrahan, filed a claim with the Department of Health and Human Services, Social Security Administration, seeking disability benefits stemming from a work-related lower-back injury. His claim was denied both initially and upon reconsideration. The plaintiff was granted a hearing before Administrative Law

**1442**

Judge Ronald G. Bernoski ("the ALJ"), where the plaintiff, a physical therapist (Bonnie Beyer), and a vocational expert (Maude Prall) testified. On September 25, 1990, the ALJ concluded that, while his impairment was severe, the plaintiff did not qualify as disabled under the SSA and therefore was not entitled to disability benefits.

On July 15, 1991, the plaintiff's request for review of the ALJ's decision was denied by the Appeals Council. He then filed the instant complaint, appealing the ALJ's final administrative decision. A briefing schedule was promulgated, and both the plaintiff and the Secretary filed motions for summary judgment. Pursuant to Title 28, U.S.C. § 636(b)(1)(B) (1988 & Supp.1993), Magistrate Judge Robert L. Bittner concluded that the ALJ's dismissal of the plaintiff's claim was contrary to the evidence presented at the hearing, and recommended that this Court grant his motion for summary judgment of reversal and deny the Secretary's motion for summary judgment of affirmance. On January 6, 1993, after properly conducting a *de novo* review of Magistrate Bittner's findings, *see* 28 U.S.C.S. § 636(b)(1)(C) (1988 & Supp.1993), this Court adopted his recommendation regarding disposition of the parties' respective summary judgment motions.

## B. *FACTUAL BACKGROUND*

On July 15, 1988, the plaintiff was allegedly disabled when he strained his lower back while moving tables at work. At the ALJ hearing, he described his pain as a "throbbing dull pain" which spans his back about one or two inches above his belt line and then extends down his left leg, where it becomes a tingling "pins and needles"-type pain. Tr. at 74–75. According to the plaintiff, this pain prevents him from remaining in one position for any great length of time. *Id.* at 76–77. He is reportedly able to sit from eight to twenty minutes at a time if he can shift his weight, and can stand for two to twenty minutes. *Id.* The plaintiff testified that he is able to do light housework that does not involve lifting or reaching, and he drives only short distances based on the physical discomfort caused by sitting in one position for an extended time. *Id.* at 79. During the day,

the plaintiff ordinarily watches television or reads while he is resting. *Id.* at 76. Approximately ten times a month, he walks one block to a park near his house, rests for a short time on a bench, then returns home. *Id.* at 81.

Since suffering his injury, the plaintiff has experienced at least four episodes where the pain across his lower back becomes acute, forcing him to remain off his feet for approximately four days. Tr. at 75. During these times, even the slightest movement, such as shifting positions in bed, causes him significant pain. *Id.* at 90. The plaintiff reportedly spoke with a neurological surgeon, Dr. Marshall Cushman, about this pain and possible treatments. *Id.* at 84. According to the plaintiff, Dr. Cushman discussed surgery to remove a herniated disc as a possible treatment; however, because Dr. Cushman acknowledged a likelihood that surgery would actually worsen his condition, the plaintiff has not followed that course of treatment. *Id.*

The plaintiff's physical therapist, Bonnie Beyer, testified before the ALJ that she treated him for a year, starting in October of 1988, during which time he made only minor improvements. Tr. at 43. During therapy, the plaintiff often went into muscle spasms due to his lower back pain, a reaction which is medically documentable and consistent with the pain accompanying a herniated disc. *Id.* at 48. When this pain occurred, Ms. Beyer instructed him to go into the "90/90 position," where he lay on the floor with his feet propped up on a stool so his thighs were at a 90-degree angle to his back and his calves were at a 90-degree angle to his thighs. *Id.* at 46. This position, which he would maintain for 20 to 30 minutes, would alleviate his pain sufficiently to allow him to continue working in a sitting or standing position. *Id.* Similar relief could be attained by lying on his side with his legs in the 90/90 position. *Id.* Although sitting in a chair would place his legs in a 90/90 position, the gravitational pull on his spine would exacerbate, rather than relieve, his pain. *Id.* at 47. The plaintiff was comfortable at a minimum level of activity, where he had the option of going into the 90/90 position when he felt

discomfort. *Id.* at 52–53. Pacing was more comfortable than standing still, because the pressure on his left side was relieved with every other step. *Id.* at 55. Eventually, however, Ms. Beyer instructed the plaintiff to continue his prescribed exercises at home, as he was not making progress in formal therapy. *Id.* at 49.

The vocational expert, Maude Prall, testified before the ALJ that the plaintiff's most recent job as a security instructor was skilled labor which put him at an exertional level of medium. Tr. at 94. His previous experiences fell in a range of unskilled to semi-skilled with a light to high medium exertional level. *Id.* at 95. Ms. Prall indicated that the plaintiff was physically capable of acting as a security guard at a light exertional level, but that his educational background would enable him to perform entry-level clerical work with skill levels ranging from unskilled to semi-skilled.[2] *Id.* at 97–99. In addition, unskilled sedentary factory jobs were available, where he could perform tasks such as packaging, assembling, and section work. *Id.* at 99. These jobs all provide a sit/stand option. *Id.* Ms. Prall conceded on cross-examination, however, that, if the plaintiff's testimony about his physical capabilities was true, he would need a job which would allow him to sit, stand, and walk intermittently. *Id.* at 100. She admitted that no jobs with a sit/stand/pace option were currently available. *Id.*

After hearing this testimony, the ALJ considered reports from both treating and consulting physicians. The plaintiff had originally been treated for his condition by Dr. M.A. DeJohn and Dr. Donald Fonte in Louisiana, where he lived until late 1988. Tr. at 20. An MRI taken in July, 1988, revealed a herniated disc and degenerative disc disease with no bulging or herniation. *Id.* at 191. The plaintiff proceeded with physical therapy on an out-patient basis, and his condition improved symptomatically over a three-month period. *Id.* at 20. Surgery was not viewed as an immediate option in the hope that the therapy would be effective. *Id.*

After moving to Wisconsin, the plaintiff began seeing Dr. Richard Rustia, Dr. Michael Brennan, and Dr. Cushman. Tr. at 20–22. While a lumbar myelogram done in January, 1988, showed normal results, a CT scan given at the same time showed either a large herniated disc or artifact at L4–L5. *Id.* at 21. Various other tests led the physicians to conclude that the plaintiff suffered from a mildly herniated or protruding disc in the L4–L5 region. *Id.* at 22. The plaintiff underwent a series of epidural steroid injections in the spring of 1989; however, he claimed that this treatment exacerbated, rather than relieved, his discomfort. *Id.* at 23. The plaintiff was also taking Naprosyn and Flexeril; however, financial constraints limited his ability to ingest these medications on a regular basis. *Id.* at 71.

Finally, the ALJ considered a functional capacity evaluation by Ottie Bruno, a physical therapist, who opined that the plaintiff was not magnifying his symptomatology. Tr. at 23. The plaintiff's pain had prevented him from performing some of the standard tests in the evaluation, resulting in findings too low to compare with normal healthy males. *Id.* at 23; 217–18. Mr. Bruno concluded that the plaintiff would not be an appropriate candidate for the Work Hardening Program. *Id.* at 225.

On September 25, 1990, the ALJ issued his findings. He concluded that, although the plaintiff did have a mildly herniated disc, he was not disabled under the SSA. Tr. at 30–31. The ALJ found his allegations of pain not credible in light of the objective medical evidence and based upon his failure to seek alternative treatments and to visit his doctors more frequently. *Id.* at 28–29. For example, his failure to undergo surgery indicated an "apparent willingness to tolerate the status quo," while the lack of muscle atrophy noted in the medical records indicated that the plaintiff's activities were not as restricted as claimed. *Id.* at 28–29.

According to the ALJ, a number of job positions involving sedentary work with a sit/stand option could be filled by the plaintiff, including certain types of security work.

---

**2.** Because the court reporter was unable to hear relevant portions of Ms. Prall's testimony, the record is unclear as to the specific nature of the work involved.

1444

Tr. at 29. Although the ALJ discussed Bonnie Beyer's testimony, he nevertheless concluded that the plaintiff was not restricted to that category of jobs with a sit/stand/pace option, finding that "the combination of sitting and standing is sufficient to take into consideration claimant's condition." *Id.* Finally, he noted that, because of the plaintiff's age, the issue of transferability of skills was not relevant to a finding of disability. *Id.* at 28.

## II. *LEGAL FRAMEWORK*

■ Under the EAJA, "a prevailing party other than the United States ... in any civil action, including proceedings for judicial review of agency action, brought by or against the United States" shall be awarded fees and other expenses incurred therein unless "the position of the United States was substantially justified or ... special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). This provision includes the recovery of "reasonable attorneys' fees," which "shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." *Id.* at § 2412(d)(2)(A). Attorney's fees under the EAJA may not be recovered for representation before an agency or ALJ, but are available for services provided in judicial review of such actions if the plaintiff prevails. *Shepard v. Sullivan,* 898 F.2d 1267, 1271 (7th Cir.1990). A "party" under the EAJA includes "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed." *Id.* at § 2412(d)(2)(B). The "United States includes any agency and any official of the United States acting in his or her official capacity," and "a position of the United States" includes "the action or failure to act by the agency upon which the civil action is based." *Id.* at § 2412(d)(2)(C) and (D). Any ALJ decision concerning disability benefits qualifies as an action of the Secretary. *Cummings v. Sullivan,* 950 F.2d 492, 495 (7th Cir.1991).

■ To find that a position of the government was "substantially justified," the Court must determine that it was " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). Under the EAJA, a position "can be substantially justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Id.* at 566, n. 2, 108 S.Ct. at 2550, n. 2. *See also Damato v. Sullivan,* 945 F.2d 982, 987 (7th Cir. 1991). While the EAJA does not demand that the position of the government be "justified to a high degree," it nevertheless requires a stance "more than merely undeserving of sanctions for frivolousness." *Id.* 487 U.S. at 565–66, 108 S.Ct. at 2550–51. Finally, although "it is clear that both the litigating position of the Secretary before [this] district court and the agency's [and ALJ's] prelitigation conduct ... [and] position that gave rise to the litigation in district court are the subjects of this 'justifiable position' inquiry," *Cummings,* 950 F.2d at 496; *Gotches v. Heckler,* 782 F.2d 765, 767 (7th Cir.1986), the Court is required to make "only one threshold determination" regarding the substantial justification of the government's position "for the entire civil action." *Commissioner, I.N.S. v. Jean,* 496 U.S. 154, 158, 110 S.Ct. 2316, 2319, 110 L.Ed.2d 134 (1990).

Under the SSA, the Court may grant attorneys' fees:

"whenever a court renders a judgment favorable to a claimant under this title who was represented before the court by an attorney ... [in an amount] not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Secretary may ... certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits." 42 U.S.C. § 406(b)(1) (1988 & Supp.1993).

Again, the Court may only award such fees for costs incurred in litigation; only the Social Security Administration may award fees for administrative representation, and the total fees awarded by the Court and the SSA may not exceed the statutory cap. *See Poole v. Bowen,* 689 F.Supp. 500, 502 (E.D.Pa.

1988). Finally, the Court may award attorneys' fees under both the EAJA and the SSA for the same services; however, while the claimant's attorney is entitled to keep the larger award, the plaintiff must receive the smaller amount. *Id.*

### III. *DISCUSSION*

#### A. *PARTIES' ARGUMENTS*

The plaintiff argues that the government has the burden of showing that its position in this case, both at the agency level and in court, was substantially justified under the EAJA. He notes that, while there is no automatic finding that the government's position was not substantially justified simply because it lost its case, a finding of disability was overwhelmingly supported by the record in this case. With no special circumstances rendering payment of attorneys fees under the EAJA unjust, he argues that the Court must award fees and expenses of $6,963.03 in this case; $6,843.03 in litigation fees calculated at a rate of $111.45 per hour for 61.4 hours of work, plus $120.00 for filing expenses.

The plaintiff also requests that attorneys fees of $2,941.25 be awarded from the plaintiff's past-due social security disability benefits under the SSA. He claims that this is a reasonable attorney's fee for representation in federal court, and notes that this amount plus the amount that his attorney, Thomas E. Bush, requested to be authorized by the Social Security Administration for representation before the agency equals 25% of the past-due benefits paid on the plaintiff's account.

The defendant did not respond to the plaintiff's fee claim under the SSA, limiting its arguments to the plaintiff's claim for attorneys fees and expenses under the EAJA. The defendant argues that the government's position, both at the agency level and in court, was substantially justified for several reasons. First, he notes that the plaintiff seeks fees for time spent by his attorney in a phone conference discussing the plaintiff's "attempt to begin a job that day"; this, he claims, supports a finding that the ALJ's decision disallowing benefits was substantially justified. He also cites *Wilfong v. United*

*States*, 991 F.2d 359, 368 (7th Cir.1993), in claiming that, because the ALJ made a credibility determination as to the plaintiff's allegations of pain, it is an abuse of discretion for the Court to find that the government's position was not substantially justified. Finally, he claims that a herniated disc is not per se disabling, and claims that the ALJ reasonably resolved apparent conflicts in the medical evidence.

In reply to the defendant's above-referenced response, the plaintiff asserts that the defendant is simply rearguing this case, thereby inadvertently confusing the substantial evidence standard previously applied by the Court to uphold the ALJ decision on summary judgment (see Decision and Order dated January 6, 1993) with the substantial justification standard used to grant attorney's fees under the EAJA. He also argues that *Wilfong* only requires the Court to find the government's position substantially justified when resolution of a case *turns on* the issue of credibility, which he claims is not the circumstance in this case. Finally, he notes that the Court reversed, rather than remanded, the decision of the Secretary and the ALJ based on lack of substantial evidence, and that the work attempt by the plaintiff cited by the defendant in his response brief was unsuccessful, thereby supporting his disability claim.

#### B. *ANALYSIS*

As previously noted, the Court is required to award attorney's fees to the plaintiff under the EAJA if the plaintiff is a prevailing party, the position of the government was not substantially justified, and no "special circumstances" make an award of fees unjust. 28 U.S.C. § 2412(d)(1)(A) (1990 & Supp. 1993); *see Cummings*, 950 F.2d at 494–95. The plaintiff affies that he is an individual whose net worth did not exceed two million dollars at the time this action was filed, thus qualifying him as a "party" entitled to recover under the EAJA. Neither the defendant nor this Court challenge this contention; therefore, based on this Court's prior grant of summary judgment for the plaintiff, he clearly qualifies as a "prevailing party" under the EAJA. *See Shepard*, 898 F.2d at 1271.

The primary issue for the Court to determine, then, is whether the position of the government, either at the agency level or in court, was "substantially justified" as defined in *Pierce*. The government has the burden of proving that its position was substantially justified. *Id.* at 495; *United States v. Kemper Money Market Fund, Inc.*, 781 F.2d 1268, 1276 (7th Cir.1986). The plaintiff contends that the defendant has failed to meet this burden and allegedly confuses the standard for finding "substantial justification" of a government position in a claim for attorney's fees under the EAJA with the "substantial evidence standard" previously applied by the Court in this case to reverse the underlying ALJ decision on summary judgment. It is clear that "substantial evidence" and "substantial justification" are two different legal standards of review, used at different stages and involving different tests. *Cummings*, 950 F.2d at 498. Specifically, "substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Schaefer v. Heckler*, 792 F.2d 81, 84 (7th Cir.1986), while "substantially justified" is defined as " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce*, 487 U.S. at 565–66, 108 S.Ct. at 2550–51. Courts recognize that "the substantial justification standard is a lesser standard than the substantial evidence standard used to review administrative determinations," *Brouwers v. Bowen*, 823 F.2d 273, 275 (8th Cir.1987); *see also Broussard v. Bowen*, 828 F.2d 310, 311–12 (5th Cir.1987), and the mere fact that the government loses a case does not create a presumption that its position was not substantially justified. *Cummings* at 498; *Broussard* at 312. While the "substantial justification" test does not require the Court to view the evidence in a light most favorable to the government, it does require a finding that the government's position, based on all available evidence, has "a reasonable basis in law and fact." *Pierce*, 487 U.S. at 565–66, 108 S.Ct. at 2550–51.

It is clear, then, that the same evidence reviewed by the Court in its prior "substantial evidence" determination must be re-examined to determine whether the Secretary can meet the lower threshold required to "substantially justify" its position. The plaintiff, then, is misguided in claiming that the defendant has confused the two standards by re-emphasizing in this matter the factors previously presented by the defendant to this Court on summary judgment. While a second comprehensive review of the record is not necessary, the Court shall briefly revisit the evidence, already found to be insufficient to support the ALJ decision, to determine whether the government's position, both prior to litigation and before this Court, was nevertheless substantially justified.[3]

**Prelitigation Position**

The defendant argues that the ALJ was substantially justified in finding "that the plaintiff's allegations of disabling pain were not credible to the extent that he could not do sedentary work with a sit/stand option." This claim is based on several factors, including medical reports that the plaintiff had no motor weakness, no sensory changes, normal reflexes, and no evidence of fasciculation or muscle wasting (Dr. Fonte), that his gait was normal and he had no motor loss (Dr. Rustia), and that his "neurologic examination would not specifically confirm a radiculopathy," he was "generally strong," and his medications kept him relatively "comfortable" (Dr. Cushman). The defendant also argues that the ALJ considered that the plaintiff had no parasinous muscle spasms, walked comfortably without a limp, had muscle strength of 5+/5 with no atrophy (Dr.

---

**3.** As previously noted, the Secretary's litigation position before this Court and the prelitigation conduct by the Secretary and ALJ together qualify as a single "position taken by the United States" for purposes of recovering attorney's fees under the EAJA. *Jean*, 496 U.S. at 159, 110 S.Ct. at 2319; *see also Cummings*, 950 F.2d at 496. While the Court must "make only one finding about the justification of that position," *Jean*, 496

U.S. at 159, 110 S.Ct. at 2319, we are nonetheless required to *consider* "both the prelitigation conduct and the subsequent litigation position of the Secretary" in making that determination. *Cummings*, 950 F.2d at 497. As a result, the Court shall revisit both the evidence supporting the ALJ decision and the evidence supporting the litigation position of the Secretary.

Brennan), and that his January 1989 lumbar myelogram was normal and his May 1989 MRI showed only a "small" disc herniation. The defendant asserts that the ALJ "reasonably resolved the [apparent] conflict in the evidence regarding plaintiff's strength in favor of the physicians' opinions."

Standing alone, these observations may be sufficient to satisfy a reasonable person that the plaintiff's allegations of pain were exaggerated. However, this is true only when the evidence is viewed in a vacuum without regard to the record as a whole. While the ALJ is entitled to make credibility determinations, he may not turn a blind eye to evidence without "a minimal level of articulation of [his] assessment of the evidence." *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir.1984). Nor may he take a fragment of a document and read it in a manner contradictory to its underlying meaning in order to "substantially justify" his position. For example, Dr. Fonte's report, which is dated one week after the plaintiff's injury occurred and well before a reasonable person would expect symptoms of "abnormal reflexes, sensory changes, or muscle wasting," also noted that a CAT scan indicated a disc herniation at L4–5 and that, while he recommended the continuing of conservative treatment, a disc excision would be considered "if his symptoms increase while becoming ambulatory." Similarly, Dr. Rustia's report of November 11, 1988 also noted a limited range of motion, some paravertebral muscle spasm, somewhat hyperactive reflexes on both sides, and some hypesthesia at the anterior thigh area. Dr. Cushman's report of November 10, 1988 also acknowledged that, based on the plaintiff's medical history, "a herniated lumbar disc at L4–5 would seem to be present," his medications kept him "comfortable at least to some extent" (not "reasonably," as asserted by the defendant), his "constant ache in the low back varies from day to day" (suggesting variations in symptomatology over time), and suggested that he undergo a myelogram. In addition, Dr. Brennan's report on March 23, 1989 also stated that the plaintiff had an L4–5 disc herniation, recommended epidural steroid injections, and suggested the possibility of surgery. Furthermore, while his January 1989 myelogram was "essentially nor-

mal," a post-myelogram CT scan given at the same time showed a rather large disc at L4–5, and an MRI scan later that month revealed a mildly herniated disc. Finally, Mr. Bruno, a physical therapist, concluded that the plaintiff was not, in fact, "magnifying his symptomatology."

Although an ALJ may rely upon physicians' reports to resolve conflicting medical evidence, it was not reasonable in this case for the ALJ to justify his conclusions by selecting isolated observations by doctors who, in the same reports, noted significant examples of symptomatology *and never questioned their genuineness*. The only medical opinion, in fact, addressing the genuineness of the plaintiff's symptomatology (that of Mr. Bruno) actually affirms his allegations of pain. Therefore, the Court finds that the ALJ was not substantially justified in his conclusions regarding the plaintiff's condition and capacity to perform based on the medical reports contained in the record.

In addition, the ALJ failed to consider the testimony of Bonnie Beyer, the plaintiff's physical therapist. As previously noted, Ms. Beyer testified that the plaintiff exhibited symptoms consistent with the pain accompanying a herniated disc in therapy, which were alleviated by assuming the "90/90 position" for 20 to 30 minutes. This clearly indicated that a sedentary job with a sit/stand option would not be appropriate. While 20 C.F.R. § 404.1513(a) does not include a physical therapist not licensed as a physician as an acceptable source of medical testimony, 20 C.F.R. § 404.1513(d) permits the Secretary to consider information from sources other than licensed medical personnel, including physical therapists. In his findings, the ALJ summarized Ms. Beyer's testimony; however, he did not address her testimony regarding the plaintiff's need to pace or lie down periodically. Instead, after stating his belief that a job with a sit/stand option was appropriate, he found that, "absent additional evidence," the plaintiff was not disabled under the vocational guidelines. Thus, not only did the ALJ not determine whether Ms. Beyer's testimony was credible, but he also failed to consider it at all. Although the ALJ is entitled to ignore uncontradicted evidence, he

must give at least a "sketchy" opinion as to his reasons, for the purpose of review. *Stephens v. Heckler,* 766 F.2d 284, 287 (7th Cir.1985). The failure to comment on why Ms. Beyer's testimony was not relied upon in determining work options available to the plaintiff, when coupled with the lack of medical evidence supporting the ALJ decision, causes the Court to find that the government's position lacks substantial justification.

The plaintiff's own testimony about his daily activities similarly went unheard. The ALJ characterized a diary of daily activities kept by the plaintiff as self-serving and chronicling a life in which very little time was spent in constructive activities. However, the diary encompassed a three-day span of the plaintiff's life, and his testimony conveyed a much broader picture. Although much of the plaintiff's time was spent on a day bed, he claimed that he did some of the exercises prescribed by his physical therapists, took baths, and took short walks to the park, among other activities. Moreover, the defendant's attempt to impeach the plaintiff's testimony regarding his pain was likewise ineffective. The Secretary argued that the plaintiff's testimony that his pain was "a dull pain most of the time" undercut his claim that the pain was debilitating. However, in light of the plaintiff's entire testimony, it is clear that his use of the word "dull" was descriptive of the nature, not the quality, of the pain. A dull pain may be disabling if it is constant and relentless, while a sharp pain may be harmless if fleeting. Furthermore, the plaintiff's testimony that his pain ranged between five and ten on a ten-point scale (zero designating no pain, ten designating intense pain) supports his contention that he lived with constant pain. Reliance by the ALJ on these factors to support his conclusions, therefore, was similarly unreasonable.

The defendant, however, cites *Wilfong* as authority that, when the resolution of a case involves a determination of witness credibility, it is an abuse of discretion to find the government's position not substantially justified. In *Wilfong,* however, the Seventh Circuit held that, "when resolution of a case *hinges to such an extent* on determinations of witness credibility, it is an abuse of discretion to find that the government's position was not substantially justified." *Wilfong,* 991 F.2d at 368 (emphasis added). In *Wilfong,* a tax-return preparer sought attorneys' fees and costs from the government under Title 26 U.S.C. § 7430 after successfully obtaining a refund of a penalty imposed by the I.R.S. for an alleged negligent disregard of tax rules and regulations. The issue before the *Wilfong* court was whether the government justifiably asserted in the underlying action that the plaintiff failed to act as a reasonable and prudent preparer in seeking additional information from his client. *Id.* at 367. The *Wilfong* court noted that "resolution of the [underlying] case turned on the jury's determinations of witness credibility," *id.* at 368, and found "sufficient justification" for the government's action based, in part, on the fact that the district court, in denying a motion for directed verdict, "expressed its belief that the government had produced sufficient evidence of negligence to support a verdict in its favor." *Id.* at 368. In this case, however, the government has produced no credible evidence to dispute the plaintiff's claim. Furthermore, given the medical evidence contained in the record, this case (unlike *Wilfong* ) does not turn on the credibility of the plaintiff's testimony. The ALJ based his credibility assessment of the plaintiff primarily on the above-mentioned physicians' reports; there is no indication in his decision that he found the plaintiff's allegations not credible *based on the plaintiff's statements or demeanor at the hearing.* In brief, where witness credibility is not the determining issue, and medical reports are unreasonably applied in the credibility determination, this Court is not bound to uphold the ALJ decision as substantially justified.

The ALJ also characterized the plaintiff's refusal to undergo surgery after discussions with Dr. Cushman as indicating a willingness to tolerate the status quo. Several of the plaintiff's physicians, however, including Dr. Cushman, had reservations about recommending surgery, noting that it could leave him in as much or more pain. The Court finds that this inference by the ALJ was not reasonable. No evidence was presented to indicate that surgery would reduce the plaintiff's discomfort or cure his condition. There

was evidence, however, that surgery would leave him in the same amount of pain, and could possibly result in paralysis. As noted by Magistrate Bittner, 20 C.F.R. § 404.-1530(c) exempts a patient from following a prescribed medical treatment if it is "very risky" for that patient. The ALJ's inference would require a claimant alleging pain to undergo risky surgery without a good prognosis in order to prove that his allegations were true. The Court finds such a requirement manifestly unreasonable.

Furthermore, in another semantic discrepancy, the ALJ took Mr. Bruno's conclusion that the plaintiff was sedentary to mean that he was qualified for sedentary work under the vocational guidelines. Mr. Bruno, however, is not a vocational expert; moreover, it is apparent from the evidence in the record that he was merely describing the plaintiff's strength, rather than his proper vocational guidelines range. The ALJ also wrongly interpreted another physical therapist's statement that the plaintiff was sedentary, and it is clear from the record that no physical therapist ever diagnosed the plaintiff as "sedentary" in the sense that he was able to sit for long periods of time. Moreover, Ms. Prall, a vocational expert, testified before the ALJ that, if the plaintiff required employment with a sit/stand/pace option, no jobs were currently available. In brief, not only is there no evidence that the plaintiff was able to perform the activities classified as "sedentary" under the vocational guidelines, there is substantial evidence that he could not do so, thus qualifying him as disabled under the SSA. As a result, the ALJ determination that the plaintiff was not disabled and could be employed was not substantially justified.

In brief, the entire record is consistent with the plaintiff's claims regarding his disability. While the ALJ noted inconsistencies in the plaintiff's physical examinations, they are actually consistent with his testimony that his pain recedes at times. And as previously described, none of the physicians who recorded these results ever concluded that the plaintiff was not injured or suggested that his pain was exaggerated; Mr. Bruno concluded that the plaintiff was not, in fact,

"magnifying his symptomatology." It was not reasonable for the ALJ to substitute his impression of the plaintiff's capabilities for that of numerous physicians, two physical therapists, and a vocational expert. Therefore, the Court finds that the prelitigation position of the Secretary (and the ALJ) was not substantially justified under the EAJA.

**Litigation Position**

█ The Secretary argued before this Court on summary judgment that the ALJ decision was supported by substantial evidence and therefore should have been affirmed. While one may argue that, given the adversarial nature of litigation, it would be unreasonable for this Court to now find that the Secretary should have adopted any other position, it would be a gross misreading of the EAJA, and unfair to the plaintiff, for this Court to find that the Secretary acted reasonably in litigating a position which has already been found to lack substantial justification. The Secretary, after all, was fully aware of all relevant evidence at the time this suit was initiated and could certainly have adopted a reconciliatory posture geared toward settlement. This Court will not penalize the plaintiff for the Secretary's failure to do so by fragmenting the government's conduct in a manner designed to give the Secretary "two bites at the 'substantially justified' apple." The government, therefore, will be bound to its initial prelitigation decision to deny disability benefits to the plaintiff in this case. As a result, the Court finds that the Secretary's litigation position similarly lacked substantial justification.

Furthermore, the defendant would be bound to its prelitigation position even if this Court were, in fact, willing to find that its litigation position was reasonable. Although the Seventh Circuit requires the "consideration" of both the Secretary's prelitigation conduct and litigation position in a "substantial justification analysis," it also requires this Court to make only one "substantial justification finding" for the entire civil action, which should be based on "the Secretary's initial position." *Cummings*, 950 F.2d at 496 (*citing Melkonyan v. Sullivan*, —— U.S. ——, ——, 111 S.Ct. 2157, 2165, 115 L.Ed.2d 78 (1991)). It is the government

action that leads a private party to the decision to litigate, rather than the action of government attorneys in litigation itself, that Congress defined in the EAJA as a "government position." *Jean,* 496 U.S. at 159, n. 7. As a result, this Court is precluded from disallowing EAJA mandatory fees by finding that, even though the prelitigation conduct of the Secretary and the ALJ was not substantially justified, the Secretary's conduct in litigation was nevertheless reasonable.

The Court finds that the Secretary has not sustained his burden of showing that the ALJ decisions regarding the plaintiff's condition and capacity were "substantially justified." The ALJ decision was supported by neither a reasonable basis in law nor in fact. As a result, the Court must grant attorney's fees to the plaintiff pursuant to the EAJA absent the existence of "special circumstances." As neither party has indicated the existence of "special circumstances" in this case, the Court hereby awards attorneys' fees and costs to the plaintiff pursuant to the EAJA in the sum of $7,946.03, as delineated below.

## Attorneys' Fees Under the EAJA

■ As previously noted, the EAJA authorizes the recovery by a prevailing party of reasonable attorneys' fees, which:

"... shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ... attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special

factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A).

On its face, the statute directs a district court to award fees in excess of $75 per hour only upon determining that (1) the prevailing market rates for the kind and quality of services provided equals or exceeds $75 per hour; and (2) an increase in the cost of living or a special factor justifies the higher fee. *Wonders v. Shalala,* 822 F.Supp. 1345, 1347 (E.D.Wis.1993) (Warren, J.). In this case, the plaintiff asserts (with no objection by the defendant) that the market value of his services exceeds $75 per hour, and that the cost of living increase since the EAJA took effect on October 1, 1981 justifies an hourly fee of $111.45.

"The movant bears the burden of producing satisfactory evidence of the prevailing market rate for the kind and quality of legal services rendered." *Wonders,* 822 F.Supp. at 1348. The plaintiff's attorney, Mr. Bush, affies that he represented the plaintiff from 7/18/91 through 3/28/93, and that his regular hourly rate for cases of this type is $125.00. The defendant did not challenge this claim, and the Court is satisfied that this charge falls within the prevailing market rate for the kind and quality of legal services provided by Mr. Bush. *See Wonders,* 822 F.Supp. at 1348; *Blum v. Stenson,* 465 U.S. 886, 896, n. 11, 104 S.Ct. 1541, 1547, n. 11, 79 L.Ed.2d 891 (1984).[4]

---

4. Specifically, the Court has considered the following factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–18 (5th Cir.1974). *See Lee v. Sullivan,* 723 F.Supp. 92, 97–98 (E.D.Wis.1989).

1) *The Time and Labor Required:* 61.4 hours. *See supra* note 7.

2) *The Novelty and Difficulty of the Questions Raised:* There is no basis for finding that the questions presented were novel or difficult.

3) *The Attorney's Opportunity Costs in Pressing the Instant Litigation:* Opportunity costs were incurred as indicated above in preparing motion for summary judgment.

4) *The Skill Required to Perform Properly the Legal Services Rendered:* Some degree of specialized expertise and skill required.

5) *The Customary Fee for Like Work:* Hourly fees ranging between $125.00 to $150.00. *See Wonders,* 822 F.Supp. at 1348.

6) *Whether the Fee is Fixed or Contingent:* Not in the record.

7) *The Time Limitations Imposed by the Client or Circumstances:* No indication of such circumstances in the record.

8) *The Amount in Controversy and the Results Obtained:* Counsel won a reversal before this Court for the plaintiff in the amount of $32,454.00. *See supra* page 1452.

9) *The Experience, Reputation, and Ability of the Attorney:* Mr. Bush affies that he has practiced law for seventeen years and that he specializes in Social Security disability law.

10) *The Undesirability of the Case Within the Legal Community in Which the Suit Arose:* No evidence that the case was undesirable within this community.

11) *The Nature and Length of the Professional Relationship Between Attorney and Client:* Not relevant to this case.

In awarding attorneys' fees under the EAJA, the Court may include cost of living increases since 1981. *Allen v. Bowen*, 821 F.2d 963 (3rd Cir.1987). This Court has observed that, "[i]n this district, it appears, adjustments for cost of living are not necessarily made as a matter of course." *Wonders*, 822 F.Supp. at 1347 (*citing Magray v. Sullivan*, 807 F.Supp. 495, 500 (E.D.Wis. 1992) (awarding $75 per hour); *McWilliams v. Sullivan*, 1989 WL 281919, *2 (E.D.Wis. 1989) (awarding $75 per hour); *Donahue v. Heckler*, 600 F.Supp. 153, 158 (E.D.Wis.1985) (awarding $75 per hour)). However, when adjustments are made, they are "generally based on the 'All Items' component of the Consumer Price Index ('CPI–AI') or one of its components, rather than the 'Legal Services' component of the Consumer Price Index ('CPI–LSI').[5] *Id. See, e.g., Continental Web Press, Inc. v. NLRB*, 767 F.2d 321, 323–24 (7th Cir.1985) (Posner, C.J.) (though plaintiff company cannot demonstrate "special factor[s]" justifying higher award, court upholds award against NLRB including 10.6% adjustment "to reflect inflation ('increase in the cost of living')"); *Price v. Sullivan*, 756 F.Supp. 400, 404–05 (E.D.Wis.1991) (Curran, J.) (employing hourly rate of $106.12 to reflect CPI–AI); *Lee v. Sullivan*, 723 F.Supp. 92, 97–98 (E.D.Wis.1989) (Curran, J.) (employing hourly rate of $99 to reflect CPI for all urban consumers ("CPI–U")). In *Wonders*, this Court joined the majority position in adopting the CPI–AI as the proper measure for upward adjustments of attorneys' fees awarded under the EAJA. *See id.* at 1347–48.

Courts in this circuit routinely grant cost of living increases when supported by the record. *See, e.g., Price*, 756 F.Supp. at 404–05; *Lee*, 723 F.Supp. at 97–98. However, while Mr. Bush applies the CPI–U to determine his EAJA hourly fees, this Court shall apply the CPI–AI as the proper adjustment factor. Applying the CPI–AI, the Court finds that the maximum hourly charge rate awardable under the EAJA, adjusted for inflation, is $112.38 per hour for 1991, $115.75 per hour for 1992, and $119.57 per hour through March of 1993.[6] In his affidavit, Mr. Bush itemizes his time charges as follows: 38.0 hours in 1991, 18.7 hours in 1992, and 11.8 hours in 1993.[7] Again, the government raises no objections, and the Court is satisfied that the hours spent by Mr. Bush on this case were reasonable. By multiplying the annual hourly rates allowable under the EAJA by the respective hours spent by Mr. Bush on the case, this Court finds $7,845.89 to be the amount of attorney's fees awardable under the EAJA in this case. The Court,

---

12) *Attorney's Fee Awards in Similar Cases:* Hourly fees ranging between $125.00 to $150.00. *See Wonders*, 822 F.Supp. at 1348.

5. This is true even though, "in many districts, the cost of legal services has risen substantially faster than the cost of other goods and services, resulting in a substantial gap between the index for legal services and the general price index." *Wonders*, 822 F.Supp. at 1346–47, n. 3 (*citing Scavone v. Sullivan*, 780 F.Supp. 976, 978 (E.D.N.Y.1992); *Harris v. Sullivan*, 773 F.Supp. 612, 615 (S.D.N.Y.1991); *De Walt v. Sullivan*, 756 F.Supp. 195, 201 (D.N.J.1991)).

6. These figures are derived from the percentage change in the CPI–AI since 1981, namely 6.2% in 1982, 3.2% in 1983, 4.3% in 1984, 3.6% in 1985, 1.9% in 1986, 3.6% in 1987, 4.1% in 1988, 4.8% in 1989, 5.4% in 1990, 4.2% in 1991, 3.0% in 1992, and 3.3% through March of 1993. *Statistical Abstract of the United States* 469 (1992) (source: Bureau of Labor Statistics, *Monthly Labor Review and Handbook of Labor Statistics*); Bureau of Labor Statistics Consumer Price Index Hotline.

7. Mr. Bush includes in his affidavit 11.0 hours spent in February and March of 1993 preparing, drafting, and reviewing this motion. In 1985, the Seventh Circuit held that such fees should not be allowed unless "a government agency resists such an application without substantial justification." *Continental*, 767 F.2d at 324. In *Lee v. Sullivan*, 723 F.Supp. 92, 96, n. 1 (E.D.Wis.1989), the court declined to follow *Continental*, opining that, "if faced with the issue again, the Seventh Circuit might well depart or modify its position," because such fees are "necessary for the preparation of the party's case." (*citing Kelly v. Bowen*, 862 F.2d 1333, 1334 (8th Cir.1988)). The Supreme Court finally settled the issue in *Jean*, holding that EAJA recovery of attorney's fees incurred in filing an EAJA fee petition does not require a second finding that the government's position in the fee litigation itself was not "substantially justified." *Jean*, 496 U.S. at 160–63, 110 S.Ct. at 2320–21 (noting that "the single finding that the Government's position lacks substantial justification ... operates as a one-time threshold for fee eligibility."). As a result, Mr. Bush is entitled to such fees in this case.

therefore, grants to the plaintiff fees and expenses of $7,965.89; $7,845.89 in attorneys' fees, and $120.00 for reimbursement of the filing fee.

**Attorneys' Fees Under the SSA**

 The SSA provision authorizing the award of attorneys' fees to a prevailing party reads as follows:

"Whenever a court renders a judgment favorable to a claimant under this title who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Secretary may ... certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits." 42 U.S.C.S. § 406(b)(1) (1988 & Supp.1993).

This provision allows attorneys to receive fees by agreement with their clients upon successful representation, while limiting the size of contingency fees payable by the client to the attorney. *Poole*, 689 F.Supp. at 502. The Court may award up to twenty-five percent of the plaintiff's past-due benefits as attorney's fees for litigation; however, only the Social Security Administration may award fees for representation in administrative proceedings. *Id.* The total award by both the Court and the SSA may not exceed the twenty-five percent cap. *Id.*

In this case, the plaintiff was entitled to receive past-due disability benefits of $32,-454.00. The benefits paid on the plaintiff's account totaled $24,512.75,[8] while $7,941.25, or slightly less than twenty-five percent of his past-due benefits, was withheld pursuant to the SSA. Mr. Bush has requested that the Social Security Administration approve $5,000.00, to be paid from the withheld funds, as attorney's fees for his representation of the plaintiff before the Secretary and ALJ. He asks this Court to award the balance of the fees withheld, totalling $2,941.25, as at-

torney's fees under the SSA for representation before this Court.

The Court previously found that both the hourly fee charged by Mr. Bush of $125.00 and his time charges of 61.4 hours were reasonable. As a result, Mr. Bush would ordinarily receive $7,695.00 for such representation. The Court is satisfied, therefore, that the $2,941.25 requested by Mr. Bush pursuant to the SSA for such representation is a reasonable figure; and, when coupled with his $5,000.00 request for attorney's fees from the Social Security Administration, the total fee recovery will not exceed the statutory cap. The Court, therefore, awards attorney's fees of $2,941.25 to Mr. Bush under the SSA, to be paid by the Secretary out of the plaintiff's withheld benefits.

Mr. Bush, however, is not entitled to keep attorney's fees collected under both the EAJA and the SSA. In 1985, Congress made clear that, when attorney's fees are awarded under both the SSA and the EAJA for the same services, an attorney is entitled to keep the larger fee but must return the smaller fee to the claimant:

"(b) Section 206(b) of the Social Security Act (42 U.S.C. § 406(b)(1)) shall not prevent an award of fees and other expenses under section 2412(d) of title 28, United States Code. Section 206(b)(2) of the Social Security Act (42 U.S.C. § 406(b)(2)) shall not apply with respect to any such award but only if, where the claimant's attorney receives fees for the same work under both section 206(b) of that Act [42 U.S.C. § 406(b)] and section 2412(d) of title 28, United States Code, the claimant's attorney refunds to the claimant the amount of the smaller fee." 28 U.S.C. § 2412 note (198–2), *as amended by* Act of August 5, 1985, Pub.L. No. 99–80, § 3, 99 Stat. 186 (1985).

*See Poole*, 689 F.Supp. at 502. The fee award provisions of the EAJA and the SSA were enacted as an incentive for attorneys to challenge questionable decisions and procedures by governmental agencies and officials, thereby "encouraging private parties to vin-

---

**8.** The plaintiff received $24,101.75 on February 11, 1993, while one of his children received $411.00 on March 6, 1993.

dicate their rights and 'curbing excessive regulation and the unreasonable exercise of Government authority.'" *Jean,* 496 U.S. at 164–65, 110 S.Ct. at 2322 *(citing,* in part, H.Rep. No. 96–1418, p. 12 (1980)). *See also Gotches v. Heckler,* 773 F.2d 108, 111 (7th Cir.1985); *Berman v. Schweiker,* 713 F.2d 1290, 1295–96 (7th Cir.1983); *Donahue,* 600 F.Supp. 153, 157. By allowing plaintiffs' attorneys to keep the larger fee award and refund the smaller amount to their clients (rather than back to the government), courts best serve the incentive system underlying the fee-shifting statutes and its underlying policies. As a result, the Secretary is ordered to pay $7,965.89 in fees and costs awarded under the EAJA to plaintiff's counsel, Thomas E. Bush, and $2,941.25 in attorney's fees awarded under the SSA to the plaintiff, James Hanrahan.

## IV. *SUMMARY*

For the foregoing reasons, the Court hereby **GRANTS** plaintiff's counsel's motion for award of attorney's fees under the EAJA and SSA, and the Secretary is **ORDERED** to pay directly to Thomas E. Bush, attorney for the plaintiff, $7,965.89 in fees and costs pursuant to the EAJA, and is **ORDERED** to pay to the plaintiff, James Hanrahan, $2,941.25 in attorney's fees pursuant to the SSA.

**SO ORDERED.**